IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MONAVIE, LLC, a Delaware limited liability company, MONAVIE EXPORTING, INC., a Utah corporation, and MONAVIE MALAYSIA SDN BHD,<br><br>Plaintiffs,<br><br>vs.<br><br>WHA LIT LOH aka DR. PHILIP LOH, an individual, and CHANG LIN SAN, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER<br><br><br><br><br><br>Case No. 2:11-CV-265 TS |

This matter is before the Court on Plaintiffs' Motion for *Ex Parte* Temporary Restraining Order and Preliminary Injunction. For the reasons discussed below, the Court will grant the temporary restraining order.

I. FINDINGS OF FACT

MonaVie is a direct selling company engaged in the business of manufacturing, distributing, and selling nutritional health beverages and related products in the United States and

internationally.[1] MonaVie's products are marketed and sold through a network of independent distributors.[2] Defendants Loh and San enrolled as independent distributors of MonaVie in Malaysia.[3]

Each independent distributor is bound by a statement of "Policies & Procedures."[4] Under the Policies & Procedures, an independent distributor is authorized to sell products and operate a distributorship in the country where the distributor resides.[5] In order for a distributor to resell products in another country that MonaVie has officially opened for business (an "Opened Country"), the distributor must submit proof of residence in that country and/or meet certain qualifications.[6] The Policies & Procedures prohibit distributors from engaging in any premarket activities in countries where MonaVie is not opened for business.[7]

The Policies & Procedures also contain the following provisions:

> We own the worldwide distribution rights to MonaVie Products and opportunity. We may choose to open certain countries from time to time and will grant you limited rights to Sponsor in those countries. You shall not Sponsor outside of our Opened Countries. Also, you shall not distribute Products in any country other than your home country of enrollment. Additionally, because of important business, legal, and tax considerations, you shall not resell Products to Customers

---

[1] Docket No. 3, ¶ 10.

[2] *Id*. at ¶ 11.

[3] *Id*. at ¶19.

[4] *Id*. at ¶ 12; *id*., Ex. 1.

[5] *Id*. § 1.3.

[6] *Id*. §§ 1.3, 4.13.2.

[7] *Id*. § 2.3.8.10

and Distributors outside of your home country of enrollment. Also, to preserve
our rights, you may never secure or attempt to secure approval for our Products or
business practices; register or reserve the Company names, trademarks, trade
names, or Internet domain names; or establish any kind of business or
governmental contact on behalf of the Company. Your breach of any of these
provisions shall require you to indemnify us against any claims, demands, actions,
judgments, fines, and penalties.[8]

You shall not import any Product into a market for which that Product is not
officially approved. Products are labeled and sometimes formulated for specific
countries.[9]

You may not send any unauthorized products to another country. . . .[10]

You may not engage in any business activity in an unopened country unless we
make a general announcement to all qualifying Distributors. . . .[11]

On March 3, 2011, Defendant Loh sent MonaVie an email describing certain unauthorized activities engaged in by him and an associate, Mr. Raymond, in China.[12] Defendant San is, upon information and belief, married to Mr. Raymond. China is not an Opened Country that MonaVie has officially opened for business to distributors.[13] The March 3, 2011 email states that Mr. Raymond met with high ranking officials of China's Ministry of Health to discuss, in part, MonaVie products.[14] Additionally, Mr. Loh related that pallets of MonaVie product had

---

[8] *Id*. § 4.13

[9] *Id*. § 4.13.3.3.

[10] *Id*. § 4.13.3.6.

[11] *Id*. § 4.13.4.

[12] *Id*., Ex. 3.

[13] Docket No. 5, Decl. of Brent Ririe, ¶ 6.

[14] Docket No. 3, Ex. 3.

"already passed the China Health Inspection and have received the Sanitary Certificate, and the products have partly been sold and the rest been given as gifts to different departments in China."[15] In response to this email, MonaVie informed Mr. Loh that his and Mr. Raymond's activities were not authorized.[16] A cease and desist letter was sent to Mr. Loh on that same date.[17]

On March 5, 2011, Mr. Raymond responded to the cease and desist letter, by refusing to comply with MonaVie's demands.[18] Additionally, Mr. Raymond stated that "we are half way negotiating our way in with the relevant agencies and ministry and we will not withdraw."[19] A legal representative of Mr. Raymond's company, Acaiberry Marketing Sdn Bhd, also responded, describing the many things they had done to market MonaVie's product in China.[20] Defendant San is a registered director and shareholder/member of the Malaysia company Acai Berry Products Marketing Sdn Bhd.[21]

As a result of these communications, MonaVie caused a sales order hold to be placed on Loh's distributor account. In response, Mr. Loh requested the hold be removed and stated that he

---

[15]*Id.*

[16]*Id.*

[17]*Id.*, Ex. 4.

[18]*Id.*, Ex. 5.

[19]*Id.*

[20]*Id.*, Ex. 6.

[21]*Id.*, Ex. 7.

4

would pull himself out of the unauthorized activities that were objected to by MonaVie.[22] Based on Mr. Loh's representations, the sales order hold was lifted.

On March 17, 2011, Mr. Loh informed MonaVie that he resigned his distributorship with MonaVie.[23] Defendant San similarly resigned her distributorship.[24] On March 19, 2011, Mr. Loh was seen selling unapproved marketing materials that promote MonaVie's products and business opportunity.[25] MonaVie informed Mr. Loh that his actions violated the Policies & Procedures.[26]

On March 25, 2011, Mr. Loh sent an email to MonaVie discussing an offer from a party in China to purchase MonaVie products.[27] Mr. Loh then stated that Acai Berry Products Marketing Sdn Bhd intends to export as many MonaVie products to China as possible. The email provides the following "next steps" to be taken:

> 1. Immediate shipment of existing stocks to Shanghai, China.
> 2. Bulk purchases from distributors in Singapore, Malaysia, Hong Kong, Taiwan and Australia to suit our future demands.
> 3. Products to be shipped from various countries to China, with a retail selling price of RMB1,200 per case.
> 4. Our China counter-part will do the repackaging of the product container/boxes.

---

[22]*Id.*, Ex. 8.

[23]*Id.*, Ex. 9.

[24]*Id.*, Ex. 10.

[25]Docket No. 5, Decl. of David McManus, ¶ 4.

[26]Docket No. 3, Ex. 11.

[27]*Id.*, Ex. 12.

    5. We will then proceed to have the products placed at Government Hospitals, Government Owned Pharmacies, Hypermarkets, Supermarkets, and Chain Stores etc.
    6. In the event that we are unable to supply the products for reasons that MonaVie's production capacity does not commensurate with total orders or demands of the China market alternative means of supply may be adopted i.e. generic duplicates/imitations. (last resort)
    7. We will proceed with clinical test as mentioned earlier in our previous email.

In addition, Mr. Loh has recently posted images of MonaVie's products on the social networking website Facebook, seeking MonaVie products from distributors so that they may be supplied to China.[28]

The Declarations of Brent Ririe and Elena Hall explain in detail the reasons that MonaVie operates as it does when opening new countries. Both individuals explain that the process of opening new countries is a time consuming process, taking many years and millions of dollars to complete. Each new country has unique regulations that MonaVie must adhere to. The consequences for failing to adhere to these regulations may be severe. Mr. Ririe states that, because of Defendant's unauthorized actions, "MonaVie stands to lose many years of effort and many millions [of] dollars that it has invested to establish a name for itself, quality and government approved products, goodwill, and a competitive market position."[29] Mr. Ririe describes the possible losses to include: (1) diminished sales and diluted trademarks, trade

---

[28] *Id*., Ex. 13.

[29] Docket No. 5, Decl. of Brent Ririe, ¶ 33.

names, and goodwill; (2) lost control and quality of its products and business in the specific foreign countries for which they are intended; or (3) exclusion from the market altogether.[30]

## II. DISCUSSION

Plaintiff brought this action against Defendants asserting claims for breach of contract, trademark infringement, and false advertising. Plaintiff now seek an *ex parte* temporary restraining order

A.  EX PARTE TEMPORARY RESTRAINING ORDER

As stated, Plaintiffs seek this temporary restraining order on an *ex parte* basis. Fed.R.Civ.P. 65(b) provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

The Court finds that Plaintiffs have met this requirement. Plaintiffs have submitted the affidavits of Brent Ririe and Elena Hall which clearly show that immediate and irreparable injury will result before the adverse party can be heard. Specifically, those affidavits provide that the following irreparable harm may occur: (1) diminished sales and diluted trademarks, trade names, and goodwill; (2) lost control and quality of its products and business in the specific foreign countries for which they are intended; or (3) exclusion from the market altogether.

---

[30]*Id*. ¶ 34.

Additionally, Plaintiffs have provided the affidavit of counsel which details the efforts made to give Defendant notice of the Motion and why, based on Defendants' previous conduct, further notice should not be required. Based on the materials presented, the Court finds that Plaintiffs have met the requirements for an *ex parte* temporary restraining order.

B.	TEMPORARY RESTRAINING ORDER STANDARD

The standard for a temporary restraining order is the same as a preliminary injunction.[31] "A preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal."[32] In order for Plaintiffs to be entitled to a preliminary injunction, Plaintiffs must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.[33] If Plaintiffs can satisfy the last three requirements, the standard for meeting the first requirement becomes more lenient.[34] If however, the preliminary injunction would disturb the status quo, as it would here, Plaintiffs bear a heightened burden and must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms.[35]

---

[31] *Bachman By and through Bachman v. W. High Sch.*, 900 F.Supp. 248, 250 (D. Utah 1995) *aff'd* 132 F.3d 542 (10th Cir. 1997).

[32] *Nova Health Systems v. Edmondson*, 460 F.3d 1295, 1298 (10th Cir. 2006).

[33] *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

[34] *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1199 (10th Cir. 1992).

[35] *General Motors Corp.*, 500 F.3d at 1226.

### 1. Substantial Likelihood of Success

#### a. Breach of Contract

Plaintiffs' first cause of action is for breach of contract. "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[36]

Plaintiffs allege that Defendants have breached the Policies & Procedures by conducting unauthorized operations in China. The Court finds that Plaintiffs have presented sufficient evidence to show a substantial likelihood of success on the merits of their breach of contract claim. The evidence before the Court is that the parties agreed to a contract, namely the Policies & Procedures. MonaVie has presented evidence that it performed under the contract by paying Defendants all commissions earned by them under the compensation plan of the Policies & Procedures.[37] MonaVie has presented sufficient evidence that Defendants have breached a number of sections of the Policies & Procedures by their unauthorized actions in China. Finally, Plaintiffs have presented sufficient evidence of damages. Therefore, the Court finds that MonaVie has shown a substantial likelihood of success on its breach of contract claim.

#### b. Lanham Act

MonaVie brings two claims under the Lanham Act: trademark infringement and false advertising. "To prevail on a trademark infringement claim, the plaintiff must show that its

---

[36]*Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 391 (Utah 2001) (citing *Nuttall v. Berntson*, 30 P.2d 738, 741 (Utah 1934)).

[37]Docket No. 5, Decl. of Elena Hall, ¶ 12.

trademark was used in commerce by the defendant without the registrant's consent, and that the use is likely to deceive, cause confusion, or result in mistake."[38]

To succeed on its false advertising claim, MonaVie must show:

(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.[39]

The Court finds that MonaVie has presented sufficient evidence to show that it is likely to prevail on its Lanham Act claims. MonaVie has presented evidence that Defendants are importing and selling MonaVie product in China. In so doing, Defendants are holding themselves out as agents of MonaVie and that they are authorized to take such actions. These representations are false. Defendants' actions are likely to cause confusion as to the origin and quality of the products at issue. Finally, Defendants' actions are likely to injury MonaVie in a number of ways, including loss of goodwill and reputation, loss of potential sales, as well as possible loss of the market entirely. Therefore, the Court finds that MonaVie has shown a substantial likelihood of success on the merits of its Lanham Act claims.

   2.   *Irreparable Harm*

A finding of irreparable harm may be based on factors such as the "difficulty in calculating damages . . . and [the] existence of intangible harms such as loss of goodwill or

---

[38] *Tsunami Softgoods, Inc. v. Tsunami Int'l, Inc.*, 2001 WL 670926, *3 (D. Utah 2001).

[39] *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 980 (10th Cir. 2002).

competitive market position."⁴⁰  MonaVie has presented sufficient evidence to show that it will be irreparably harmed in a temporary restraining order is not issued.  Specifically, MonaVie has shown that it has spent substantial time and money working to enter China as a new market. Defendants' actions threaten to diminish MonaVie's goodwill and market position, dilute MonaVie's marks, and diminish sales.  Defendants' actions could also result in loss of control and quality over MonaVie's products and could result in exclusion from the market entirely. Therefore, the Court finds that MonaVie has presented sufficient evidence of irreparable harm.

    3.    *Balance of Hardships*

The Court finds that the harm MonaVie is likely to suffer if a temporary restraining order is not issued outweighs any harm Defendants may suffer.  The harm to MonaVie is discussed above and any harm to Defendants is minimal and of their own making.

    4.    *Public Interest*

Finally, the Court finds that it is in the public interest to issue the temporary restraining order here.  There is a clear public interest in the enforcement of contracts and the protection of trademarks.

Based upon all of the above, the Court finds that MonaVie has is entitled to a temporary restraining order.

---

⁴⁰*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir. 2004).

III. CONCLUSION AND TEMPORARY RESTRAINING ORDER

It is therefore

ORDERED that Plaintiffs' Motion for Temporary Restraining Order (Docket No. 4) is GRANTED and the Court enters the following temporary restraining order.

IT IS HEREBY ORDERED that Defendants Wha Lit Loh aka Dr. Philip Loh and Chang Lin San (collectively "Defendants"), including all officers, directors, principals, agents, servants, employees, successors and assigns, and all others aiding, abetting, or acting in concert or active participation therewith, are enjoined from:

a. obtaining licensing or certification for MonaVie's products and business in China;

b. shipping MonaVie's products to China;

c. selling and distributing MonaVie's products in China;

d. placing MonaVie's products for sale in China;

e. repackaging MonaVie's products for sale and distribution in China;

f. promoting MonaVie's business opportunity in China;

g. conducting any business activities in China, Malaysia, Singapore, and elsewhere using MonaVie's products, trademarks, or trade names; and

h. advertising for the purchase and/or sale of MonaVie through any medium, including print, audio, visual, and electronic media, including, but not limited to Facebook, or any other Internet site.

It is further

ORDERED that Plaintiffs provide security in the amount of ten thousand dollars ($10,000.00). This Order will be effective upon posting of the required security.

This Temporary Restraining Order shall expire 14 days after entry. The Court sets Plaintiffs' Motion for Preliminary Injunction for April 12, 2011, at 3:30 p.m. Counsel for Plaintiffs is directed to inform Defendants of this Order and file proof of that notification with the Court.

DATED March 31, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge