IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MONAVIE, LLC, a Delaware limited liability company, MONAVIE EXPORTING, INC., a Utah corporation, and MONAVIE MALAYSIA SDN BHD,<br><br>Plaintiffs,<br><br>vs.<br><br>WHA LIT LOH aka DR. PHILIP LOH, an individual, and CHANG LIN SAN, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND PRELIMINARY INJUNCTION<br><br><br><br>Case No. 2:11-CV-265 TS |

      This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction. The Court previously issued a Memorandum Decision and Order Granting Plaintiffs' Motion for *Ex Parte* Temporary Restraining Order.[1] The Court held a hearing on the Motion for Preliminary Injunction on April 12, 2011. Neither Defendant appeared at the hearing, though both were

---

[1]Docket No. 9.

1

provided with notice of the hearing.² For the reasons discussed below, the Court will grant the preliminary injunction.

I. FINDINGS OF FACT

MonaVie is a direct selling company engaged in the business of manufacturing, distributing, and selling nutritional health beverages and related products in the United States and internationally.³ MonaVie's products are marketed and sold through a network of independent distributors.⁴ Defendants Loh and San are enrolled as independent distributors of MonaVie in Malaysia.⁵

Each independent distributor is bound by a statement of "Policies & Procedures."⁶ Under the Policies & Procedures, an independent distributor is authorized to sell products and operate a distributorship in the country where the distributor resides.⁷ In order for a distributor to resell products in another country that MonaVie has officially opened for business (an "Opened Country"), the distributor must submit proof of residence in that country and/or meet certain qualifications.⁸ The Policies & Procedures prohibit distributors from engaging in any premarket

---

²Docket No. 12.

³Docket No. 3, ¶ 10.

⁴*Id*. ¶ 11.

⁵*Id*. ¶19.

⁶*Id*. ¶ 12; *id*., Ex. 1.

⁷*Id*. § 1.3.

⁸*Id*. §§ 1.3, 4.13.2.

2

activities in countries where MonaVie is not opened for business.[9]

The Policies & Procedures also contain the following provisions:

We own the worldwide distribution rights to MonaVie Products and opportunity. We may choose to open certain countries from time to time and will grant you limited rights to Sponsor in those countries. You shall not Sponsor outside of our Opened Countries. Also, you shall not distribute Products in any country other than your home country of enrollment. Additionally, because of important business, legal, and tax considerations, you shall not resell Products to Customers and Distributors outside of your home country of enrollment. Also, to preserve our rights, you may never secure or attempt to secure approval for our Products or business practices; register or reserve the Company names, trademarks, trade names, or Internet domain names; or establish any kind of business or governmental contact on behalf of the Company. Your breach of any of these provisions shall require you to indemnify us against any claims, demands, actions, judgments, fines, and penalties.[10]

You shall not import any Product into a market for which that Product is not officially approved. Products are labeled and sometimes formulated for specific countries.[11]

You may not send any unauthorized products to another country. . . .[12]

You may not engage in any business activity in an unopened country unless we make a general announcement to all qualifying Distributors. . . .[13]

On March 3, 2011, Defendant Loh sent MonaVie an email describing certain unauthorized activities engaged in by him and an associate, Mr. Raymond, in China.[14] Defendant

---

[9] *Id*. § 2.3.8.10.

[10] *Id*. § 4.13.

[11] *Id*. § 4.13.3.3.

[12] *Id*. § 4.13.3.6.

[13] *Id*. § 4.13.4.

[14] *Id*., Ex. 3.

San is, upon information and belief, married to Mr. Raymond. China is not an Opened Country that MonaVie has officially opened for business to distributors.[15] The March 3, 2011 email states that Mr. Raymond met with high ranking officials of China's Ministry of Health to discuss, in part, MonaVie products.[16] Additionally, Mr. Loh related that pallets of MonaVie product had "already passed the China Health Inspection and have received the Sanitary Certificate, and the products have partly been sold and the rest been given as gifts to different departments in China."[17] In response to this email, MonaVie informed Mr. Loh that his and Mr. Raymond's activities were not authorized.[18] A cease and desist letter was sent to Mr. Loh on that same date.[19]

On March 5, 2011, Mr. Raymond responded to the cease and desist letter, by refusing to comply with MonaVie's demands.[20] Additionally, Mr. Raymond stated that "we are half way negotiating our way in with the relevant agencies and ministry and we will not withdraw."[21] A legal representative of Mr. Raymond's company, Acaiberry Marketing Sdn Bhd, also responded,

---

[15] Docket No. 5, Decl. of Brent Ririe, ¶ 6.

[16] Docket No. 3, Ex. 3.

[17] *Id.*

[18] *Id.*

[19] *Id.*, Ex. 4.

[20] *Id.*, Ex. 5.

[21] *Id.*

4

describing the many things they had done to market MonaVie's product in China.²² Defendant San is a registered director and shareholder/member of the Malaysia company Acai Berry Products Marketing Sdn Bhd.²³

As a result of these communications, MonaVie caused a sales order hold to be placed on Loh's distributor account. In response, Mr. Loh requested the hold be removed and stated that he would pull himself out of the unauthorized activities that were objected to by MonaVie.²⁴ Based on Mr. Loh's representations, the sales order hold was lifted.

On March 17, 2011, Mr. Loh informed MonaVie that he resigned his distributorship with MonaVie.²⁵ Defendant San similarly resigned her distributorship.²⁶ On March 19, 2011, Mr. Loh was seen selling unapproved marketing materials that promote MonaVie's products and business opportunity.²⁷ MonaVie informed Mr. Loh that his actions violated the Policies & Procedures.²⁸

---

²²*Id.*, Ex. 6.

²³*Id.*, Ex. 7.

²⁴*Id.*, Ex. 8.

²⁵*Id.*, Ex. 9.

²⁶*Id.*, Ex. 10.

²⁷Docket No. 5, Decl. of David McManus, ¶ 4.

²⁸Docket No. 3, Ex. 11.

On March 25, 2011, Mr. Loh sent an email to MonaVie discussing an offer from a party in China to purchase MonaVie products.[29] Mr. Loh then stated that Acai Berry Products Marketing Sdn Bhd intends to export as many MonaVie products to China as possible. The email provides the following "next steps" to be taken:

> 1. Immediate shipment of existing stocks to Shanghai, China.
> 2. Bulk purchases from distributors in Singapore, Malaysia, Hong Kong, Taiwan and Australia to suit our future demands.
> 3. Products to be shipped from various countries to China, with a retail selling price of RMB1,200 per case.
> 4. Our China counter-part will do the repackaging of the product container/boxes.
> 5. We will then proceed to have the products placed at Government Hospitals, Government Owned Pharmacies, Hypermarkets, Supermarkets, and Chain Stores etc.
> 6. In the event that we are unable to supply the products for reasons that MonaVie's production capacity does not commensurate with total orders or demands of the China market alternative means of supply may be adopted i.e. generic duplicates/imitations. (last resort)
> 7. We will proceed with clinical test as mentioned earlier in our previous email.

In addition, Mr. Loh has recently posted images of MonaVie's products on the social networking website Facebook, seeking MonaVie products from distributors so that they may be supplied to China.[30]

The Declarations of Brent Ririe and Elena Hall explain in detail the reasons that MonaVie operates as it does when opening new countries. Both individuals explain that the process of opening new countries is a time consuming process, taking many years and millions of dollars to

---

[29]*Id.*, Ex. 12.

[30]*Id.*, Ex. 13.

complete. Each new country has unique regulations, to which MonaVie must adhere. The consequences for failing to adhere to these regulations may be severe. Mr. Ririe states that, because of Defendant's unauthorized actions, "MonaVie stands to lose many years of effort and many millions [of] dollars that it has invested to establish a name for itself, quality and government approved products, goodwill, and a competitive market position."[31] Mr. Ririe describes the possible losses to include: (1) diminished sales and diluted trademarks, trade names, and goodwill; (2) lost control and quality of its products and business in the specific foreign countries for which they are intended; or (3) exclusion from the market altogether.[32]

## II. DISCUSSION

"A preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal."[33] In order for Plaintiffs to be entitled to a preliminary injunction, they must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.[34]

As discussed in the Memorandum Decision and Order Granting Plaintiffs' Motion for *Ex Parte* Temporary Restraining Order, the Court finds that MonaVie has presented a substantial

---

[31] Docket No. 5, Decl. of Brent Ririe, ¶ 33.

[32] *Id.* ¶ 34.

[33] *Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1298 (10th Cir. 2006).

[34] *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

likelihood of success on the merits of its breach of contract. Specifically, MonaVie has shown that the parties agreed to a contract, namely the Policies & Procedures. MonaVie has presented evidence that it performed under the contract by paying Defendants all commissions earned by them under the compensation plan of the Policies & Procedures. MonaVie has presented evidence that Defendants have breached a number of provisions of the Policies & Procedures by their unauthorized actions. Finally, Plaintiffs have presented evidence of damages. MonaVie has also shown a substantial likelihood of success on the merits of its Lanham Act claims.

MonaVie has established that it will be irreparably harmed if the preliminary injunction is not issued. Specifically, MonaVie has shown that it has spent substantial time and money working to enter China as a new market. Defendants' actions threaten to diminish MonaVie's goodwill and market position, dilute MonaVie's marks, and diminish sales. Defendants' actions could also result in loss of control and quality over MonaVie's products and could result in exclusion from the market entirely.

The Court finds that the harm MonaVie is likely to suffer if a preliminary injunction is not issued outweighs any harm Defendants may suffer.

Finally, the Court finds that it is in the public interest to issue the preliminary injunction.

### III. CONCLUSION AND PRELIMINARY INJUNCTION

It is therefore

ORDERED that Plaintiffs' Motion for Preliminary Injunction (Docket No. 4) is GRANTED and the Court enters the following preliminary injunction.

IT IS HEREBY ORDERED that Defendants Wha Lit Loh aka Dr. Philip Loh and Chang Lin San (collectively "Defendants"), including all officers, directors, principals, agents, servants, employees, successors and assigns, and all others aiding, abetting, or acting in concert or active participation therewith, are enjoined from:

    a.    obtaining licensing or certification for MonaVie's products and business in China;

    b.    shipping MonaVie's products to China;

    c.    selling and distributing MonaVie's products in China;

    d.    placing MonaVie's products for sale in China;

    e.    repackaging MonaVie's products for sale and distribution in China;

    f.    promoting MonaVie's business opportunity in China;

    g.    conducting any business activities in China, Malaysia, Singapore, and elsewhere using MonaVie's products, trademarks, or trade names; and

    h.    advertising for the purchase and/or sale of MonaVie through any medium, including print, audio, visual, and electronic media, including, but not limited to Facebook, or any other Internet site.

Plaintiffs have posted a bond with the Court in relation to the Temporary Restraining Order. Therefore, no further security is required. Counsel for Plaintiffs is directed to inform Defendants of this Order and file proof of that notification with the Court.

DATED April 13, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge